**Daniel REID, Jr., Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 27A04–9509–CR–345.**

Court of Appeals of Indiana.

Sept. 30, 1996.

Transfer Denied Dec. 4, 1996.

---

James A. Mckown, Jerry T. Drook, Marion, Daniel Reid, Jr., Pro Se, Pendleton, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RUCKER, Judge.

Defendant-Appellant Daniel Reid, Jr. appeals his conviction of four counts of burglary as Class C felonies.[1] Reid raises a single issue for our review which we rephrase as whether the trial court erred in denying his motion to dismiss the charges pursuant to the Interstate Agreement on Detainers.

We affirm.

On April 26, 1994 the State charged Reid with four counts of burglary. At the time the charges were filed Reid was incarcerated in Illinois serving a three-year sentence for burglary. In September 1994 Reid completed various forms pursuant to the Interstate Agreement on Detainers (IAD)[2] and requested his transfer to Indiana for disposition of the burglary charges. Those documents were received by the Grant Circuit Court on September 29, 1994. Also on that day the trial court scheduled Reid's trial for January 23, 1995 and ordered the State to arrange Reid's return to Indiana. On January 17, 1995 the trial court noted that Reid's trial date conflicted with another criminal case. On its own motion the trial court rescheduled Reid's trial for May 1, 1995. Thereafter on April 25, 1995 Reid filed a Motion to Dismiss in which he alleged that the 180–day period provided for trial by the IAD had expired. After a hearing the trial court denied the motion. In so doing the court noted that Reid had waived the issue by his failure to object to the rescheduled trial date at any time during the 180–day period. The case proceeded to a bench trial after which Reid was convicted as charged. This appeal ensued in due course.

■ Reid contends the trial court erred in denying his Motion to Dismiss. According to Reid, the trial court's failure to conduct his trial within the 180–day period mandated by the IAD requires that the charges against him be dismissed. The State counters that Reid waived the right to be brought to trial within 180 days because he failed to raise a

---

1. Ind.Code § 35–43–2–1.

2. I.C. § 35–33–10–4.

timely objection to the rescheduled trial date. Article 3 of the IAD provides in relevant part as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state,[3] and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

I.C. § 35–33–10–4.

We have previously compared the language of Ind.Crim.Rule 4(B) to provisions of the IAD in determining the circumstances under which a defendant may be entitled to discharge pursuant to the applicable 180–day time limit. *See Allen v. State*, 636 N.E.2d 190, 193 (Ind.Ct.App.1994), *trans. denied*; *Pethtel v. State*, 427 N.E.2d 891, 894 (Ind.Ct. App.1981), *trans. denied*. More than two decades ago, in discussing the provisions of Crim.R. 4, our supreme court declared that "[t]he purpose of the rules is to assure early trials and not to discharge defendants .... [w]hen a ruling is made that is incorrect, and the offended party is aware of it, *or reasonably should be presumed to be aware of it*, it is his obligation to call it to the court's attention in time to permit a correction. If he fails to do so, he should not be heard to

complain." *Utterback v. State*, 261 Ind. 685, 310 N.E.2d 552, 553–54 (1974) (emphasis added). The same reasoning is applicable here.

■ The 180–day time period under the IAD begins on the day the defendant's written notice of the place of his imprisonment and his request for a final disposition is received by the prosecuting attorney and the appropriate court having jurisdiction. *Allen*, 636 N.E.2d at 193. In this case written notice was received by the prosecuting attorney and the judge of the Grant Circuit Court on September 29, 1994. Thus, the 180–day time period expired March 28, 1995. The record shows that on receipt of the notice, the trial court appointed counsel to represent Reid and scheduled the case for trial on January 23, 1995, well within the outside time period. Counsel immediately filed a motion for discovery on Reid's behalf. Thereafter on January 4, 1995 counsel for both sides appeared in court, a pre-trial conference was conducted, and the trial court entered a pre-trial order. On January 17, 1994, six days before the originally scheduled trial date, the trial court rescheduled the matter to May 1, 1995. This was 34 days beyond the 180–day period. The record is clear that neither Reid nor his counsel was present when the new trial date was scheduled. However, nothing in the record suggests that Reid or his counsel was unaware of the rescheduled trial date. It is instructive, for example, that on the date originally scheduled for trial the record is silent concerning any activity on Reid's case. If in fact Reid was unaware of the rescheduled trial date, then one would expect that on January 23, 1995 Reid and his counsel would have appeared in court ready for a jury trial.[4] At that point Reid could have advised the court that the May 1, 1995 trial date was beyond the 180–day time limit. The silence in the record speaks loudly as to whether

---

3. Illinois is a party to the IAD. *See* 725 ILCS 225/1 to 225/32.

4. We further observe that the trial court's pretrial order, among other things, directed the parties to file with the court and to exchange with each other witness lists and exhibits no later than one week before trial, and to submit jury instructions no later than noon the Friday before trial.

*Record* at 31, 32. If Reid was unaware that the trial had been rescheduled, then Reid's witness lists and exhibits would have been filed by January 17, 1995 and his jury instructions would have been filed by January 20, 1995. Neither was done here which is further indication that Reid was well aware that he would not be proceeding to trial as originally scheduled.

Reid was aware or "reasonably should be presumed to be aware" that the trial court had rescheduled his trial beyond the 180–day time period. *Utterback,* 310 N.E.2d at 554.

■ A defendant applying for discharge pursuant to the IAD may be precluded from relief if he fails to object to a date for trial beyond the 180–day period at the time it was set or during the remainder of the time. *Reed v. State,* 491 N.E.2d 182, 185 (Ind.1986); *Scrivener v. State,* 441 N.E.2d 954, 956 (Ind. 1982). Reid had from January 17, 1995 until March 28, 1995 to object to the rescheduled trial date. He sat idly by and did nothing until April. Reid's inaction reflects a calculated and strategic ploy to attempt to obtain discharge. This ploy has failed.

Judgment affirmed.

CHEZEM, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. As a contracting state to the IAD, Indiana agrees that detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Ind.Code 35–34–10–4, Article 1. The State also agrees with other contracting states to "encourage the expeditious and orderly disposition" of detainers based on untried informations. *Id.* The IAD is not intended to protect prosecutions, but to provide a swift and certain means for resolving the uncertainties and alleviating the disabilities created by outstanding detainers. *See Carchman v. Nash,* 473 U.S. 716, 718–20, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The IAD is to be "liberally construed so as to effectuate its purposes." Ind.Code 35–33–10–4, Article 9(1).

Swift and certain resolution of uncertainties is necessary because an inmate subject to detainer bears a very heavy burden:

> [T]he inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e. honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle [him] to additional good time credits against [his] sentence; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*Carchman,* 473 U.S. at 730 n. 8, 105 S.Ct. at 3408, n. 8 (quoting *Cooper v. Lockhart,* 489 F.2d 308, 314, n. 10 (8th Cir.1973)). Stated succinctly, rehabilitation of the inmate is suspended while the detainer is in effect.

In order to avoid the uncertainties of detainers, a trial court in a contracting state must show that (1) there is good cause for the continuance established in open court; (2) that good cause was shown in the presence of the prisoner or his counsel; and (3) that the continuance given was both necessary and reasonable. *See* Ind.Code 35–33–10–4, Article 3(A). In the present case, the trial court concedes that it did not establish good cause for the continuance in open court and in the presence of Reid or his counsel. Furthermore, there is nothing in the record to establish that the length of the continuance was necessary or reasonable. *See Roberson v. Commonwealth,* 913 S.W.2d 310, 314 (Ky.1994) (holding that a trial court is required to show that the length of a continuance is necessary or reasonable); *State v. Smith,* 686 S.W.2d 543, 548 (Mo.Ct.App.1985) (holding that an overcrowded docket is not *per se* good cause to extend the hearing beyond the period of limitation).

The majority holds that the trial court's total failure to follow Ind.Code 35–34–10–4, Article 3(A) should be ignored. In doing so, the majority cites to a case which compared the language of Ind.Crim.Rule 4(B) to provi-

sions of the IAD "in determining the circumstances under which a defendant may be entitled to discharge pursuant to the applicable 180–day time limit." Opinion at 951 (citing *Pethtel v. State*, 427 N.E.2d 891, 894 (Ind.Ct.App.1981))[5]. The majority then cites a case holding that a defendant is obligated to bring a trial court's non-compliance with Crim.R. 4(B) to the court's attention because "[t]he purpose of the [criminal] rules is to assure early trials and not to discharge defendants...." *Id.* at 951 (quoting *Utterback v. State*, 261 Ind. 685, 310 N.E.2d 552, 553–54 (1974)).

Crim.R. 4(B) and the IAD are similar in design. *Pethtel*, 427 N.E.2d at 894. Accordingly, as our supreme court held in *Holland v. State*, 265 Ind. 216, 352 N.E.2d 752, 757, "[i]n interpreting the speedy trial rights created by the [IAD] ... the case law pertaining to [Crim.R. 4(B)] [is] instructive." In our haste to learn from and apply such case law, however, we must not forget that the IAD has specific limitations on the setting of trial dates not found in Crim.R. 4(B). Otherwise, as the majority has done here, the specific limitations will be effectively excised from the statute.

I would reverse and remand for entry of dismissal.

---

**5.** The majority also cites *Allen v. State*, 636 N.E.2d 190, 193 (Ind.Ct.App.1994), *trans. denied*, a case which draws its comparison between the IAD and Crim.R. 4(B) from *Pethtel*.